No. 05-472C
(Judge Mary Ellen Coster Williams)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

JUDITH A. MANSFIELD,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

TODD M. HUGHES
Deputy Director

DOUGLAS K. MICKLE
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530

Attorneys For Defendant

OF COUNSEL:
JESSIE JAMES, JR.
JULIA DOUDS
Office of the General Counsel
Library of Congress
Washington, D.C.

June 11, 2007

**TABLE OF CONTENTS**

**PAGES**

DEFENDANT'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW ..................... 1

STATEMENT OF THE CASE ..................................................................................... 1

STATEMENT OF THE ISSUES ................................................................................. 2

CONTENTIONS OF FACT DEFENDANT WILL PROVE AT TRIAL .................................... 3

CONTENTIONS OF LAW DEFENDANT WILL PROVE AT TRIAL ..................................... 9

I. The Equal Pay Act ........................................................................................ 9

II. Ms. Mansfield Cannot Establish A Prima Facie Case That The Library Violated The Equal Pay Act When It Did Not Reclassify Her Position Of Chief Of The Arts And Sciences Cataloging Division To The Senior Level ........................................................................................ 11

A. Ms. Mansfield Does Not Perform Work Equal To That Of Mr. Dimunation Or Mr. Herman ........................................................ 12

B. Even Assuming Ms. Mansfield Has Made A Prima Facie Case, Ms. Mansfield's Comparators Are The Other Chiefs In The Cataloging Directorate And All Decisions Related To Ms. Mansfield's Rate Of Pay Were Based Upon Legitimate Business Reasons And Factors Other Than Gender ...................................................... 16

III. For Trial Purposes, the Government Will Assume That Ms. Mansfield Can Establish Her Prima Facie Case Under The Equal Pay Act When She Was Temporarily Detailed To The Position Of Acting Director For Cataloging ........ 18

A. Ms. Mansfield Is Not Entitled To Be Paid The Same As Her Supervisor Mr. Wiggins Because The Pay Differential Was A Result Of HRS' Gender-Neutral Personnel Pay System And Mr. Wiggins' Seniority ..... 18

IV. Ms. Mansfield Cannot Establish An Equal Pay Act Violation For The The Period She Performed The Collateral Duties Of The Assistant Director For Bibliographic Access ........................................................................ 20

V. Even Assuming That The Library Violated the Equal Pay Act, The Facts At Trial Will Demonstrate That The Library's Violation Was Not Willful For Determining The Statute Of Limitations And Awarding Liquidated Damages .......... 21

VI. The Court Cannot Promote Ms. Mansfield To The Permanent Grade Of Senior Level Pursuant to the Equal Pay Act .......... 24

CONCLUSION .......... 25

# TABLE OF AUTHORITIES

**CASES** **PAGES**

Adams v. United States,
350 F.3d 1216 (Fed. Cir. 2003) ............ 22, 24

Allison v. United States,
39 Fed. Cl. 471 (1997) ............ 22

Alvarez v. IBP, Inc.,
339 F.3d 894 (9th Cir. 2003) ............ 22

Anderson v. United States,
764 F.2d 849 (Fed. Cir. 1985) ............ 25

Angelo v. United States,
57 Fed. Cl. 100 (2003) ............ 24

Beebe v. United States,
226 Ct. Cl. 308, 640 F.2d 1283 (1981) ............ 23

Belfi v. Prendergast,
191 F.3d 129 (2nd Cir. 1999) ............ 9, 10, 18

Corning Glass Works v. Brennan,
417 U.S. 188 (1974) ............ 11

Ellison v. United States,
25 Cl. Ct. 481, 486-87 (1992) ............ 11, 12, 24

Forsberg v. Pacific Northwest Bell Telephone Co.,
840 F.2d 1409 (9th Cir. 1988) ............ 14

Francoeur v. Corroon & Black Co.,
552 F. Supp. 403 (S.D.N.Y. 1982) ............ 14

Grumbine v. United States,
586 F. Supp. 1144 (D.D.C. 1984) ............ 24

Hirsch v. United States,
205 Ct. Cl. 256, 499 F.2d 1248 (1974) ............ 24

Jenkins v. United States,
46 Fed. Cl. 561 (2000) ............ 9, 12, 13, 14

Lambrecht v. Real Estate Index, Inc.,
1997 WL 17794 (N.D. Oh. 1997) ........................................ 13

Lissak v. United States,
49 Fed. Cl. 281 (2001) ........................................ 17, 21

Martindale v. Jason/Empire, Inc.,
1981 WL 180 (D. Kan. 1981) ........................................ 15

Molden v. United States,
11 Cl. Ct. 604 (1987) ........................................ 24

Nerseth v. United States,
17 Cl. Ct. 660 (1989) ........................................ 23

Pabst v. Oklahoma Gas & Elec. Co.,
228 F.3d 1128 (10th Cir. 2000) ........................................ 23

Robinson v. Davis Memorial Goodwill Industries, Inc.,
846 F. Supp. 104 (D.D.C. 1994) ........................................ 13

Sherman v. City of Lee's Summit,
577 F. Supp. 568 (W.D. Mo. 1983) ........................................ 13

Siegal v. United States,
38 Fed. Cl. 386 (1997) ........................................ 24

Skrobot v. United States,
208 Ct. Cl. 475, 534 F.2d 237 (1975) ........................................ 24

Soble v. University of Maryland,
778 F.2d 164 (4th Cir. 1985) ........................................ 14

Sobol v. Kidder, Peabody & Co.,
49 F. Supp. 2d 208 (S.D.N.Y. 1999) ........................................ 13

Stopka v. Alliance of American Insurers,
141 F.3d 681 (7th Cir. 1998) ........................................ 13

Unexcelled Chemical Corp. v. United States,
345 U.S. 59 (1953) ........................................ 22

United States v. Testan,
424 U.S. 392 (1976) ........................................ 24

Welde v. Tetley, Inc.,
864 F. Supp. 440 (M.D. Pa. 1994) ............................................................................ 15

Wirtz v. Wheatan Glass Co.,
284 F. Supp. 23 (D.N.J. 1968) ................................................................................. 11

Wollenburg v. Comtech Mfg. Co.,
201 F.3d 973 (7th Cir. 2000) .................................................................................... 11

Woodward v. Heritage Imports,
773 F. Supp. 306 (D. Utah 1991) .............................................................................. 13

**STATUTES**

29 C.F.R. § 1614.408 ........................................................................................................ 22

29 C.F.R. § 1620.15 .......................................................................................................... 14

29 C.F.R. § 1620.17 .......................................................................................................... 16

29 U.S.C. § 201 ................................................................................................................... 9

29 U.S.C. § 203(e)(2) ....................................................................................................... 3, 9

29 U.S.C. § 206(d) ..................................................................................................... 3, 9, 10, 24

29 U.S.C. § 216(b) ........................................................................................................ 22, 23

29 U.S.C. § 255(a) .............................................................................................................. 22

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **JUDITH A. MANSFIELD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 05-472C** |
| | ) | **Judge Mary Ellen Coster Williams** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

Pursuant to paragraph 14(b) of Appendix A of the Rules of the United States Court of Federal Claims ("RCFC") and this Court's amended scheduling order dated April 10, 2007, defendant, the United States, respectfully submits the following memorandum of contentions of fact and law regarding the claims of plaintiff, Judith A. Mansfield ("Ms. Mansfield").

**STATEMENT OF THE CASE**

Ms. Mansfield is employed by the Library of Congress ("Library") in the Library Services, a Service Unit of the Library. Complaint ("Compl.") ¶ 1, 5, 6, 15. The mission of Library Services is to develop the Library's universal collections, and to acquire, organize, provide access to, maintain, secure, and preserve these collections. Since 1998, Ms. Mansfield's permanent position of record has been Chief of the Arts and Sciences Cataloging Division ("ASCD"), GS-15, in the Cataloging directorate of Library Services. Compl. ¶ 6. In her Complaint, Ms. Mansfield makes three primary allegations: (1) that her position of Chief of the ASCD should be reclassified from a GS-15 to the Senior Level pay grade;[1] (2) that she was paid less than her male supervisor for equal work she performed when she was detailed to act in his

[1] A Senior Level ("SL") position at the Library of Congress is similar to a Senior Executive Service ("SES") position in the Executive Branch.

position, while he was detailed to another position in Library Services; and (3) that she was paid less than two male co-workers when they were all assigned similar additional collateral duties during a realignment period. Compl. ¶¶ 19, 20, 24. Accordingly, Ms. Mansfield alleges that the Library violated the Equal Pay Act, 29 U.S.C. § 206(d). Ms. Mansfield seeks an award of back pay and benefits, liquidated damages, retroactive promotion to the Senior Level pay grade, front pay until she is promoted into a Senior Level position, court costs, expenses, attorney fees, prejudgment and post-judgment interest, compensation for any additional tax burden she will incur but for defendant's actions in this matter, a declaration that defendant violated the Equal Pay Act, and such other relief as the Court deems appropriate.

The Library disagrees with Ms. Mansfield's contentions and believes that the uncontroverted evidence at trial will show that the Library's decision not to: (1) upgrade Ms. Mansfield's permanent position as Chief of the Arts and Sciences Cataloging Division to Senior Level pay or, (2) create a new permanent Senior Level position for Ms. Mansfield, was based upon budgetary and other gender-neutral considerations within the Library and not on account of Ms. Mansfield's gender. The Library will show at trial that it had legitimate business reasons for paying Ms. Mansfield at her permanent GS-15 pay grade and not upgrading her to Senior Level pay. Thus, the Library did not violate the Equal Pay Act.

## STATEMENT OF THE ISSUES

1. Whether the Library violated the Equal Pay Act when it did not reclassify and upgrade Ms. Mansfield's position as Chief of the Arts and Sciences Cataloging Division to the Senior Level after a classification review recommended that this position be considered for upgrade.

2. Whether the Library violated the Equal Pay Act during the time period when

Ms. Mansfield was temporarily detailed to the position of Acting Director for Cataloging.

3. Whether the Library violated the Equal Pay Act during the time period when Ms. Mansfield was the performing collateral duties as the Assistant Director for Bibliographic Access.

4. Whether the Court lacks jurisdiction to entertain Ms. Mansfield's claims that accrued prior to April 14, 2003, pursuant to the Equal Pay Act of 1963, 29 U.S.C. § 206 (d) et seq., as extended to the Federal Government in 1974, 29 U.S.C. § 203(e)(2), because Ms. Mansfield filed her complaint on April 14, 2005.

**CONTENTIONS OF FACT DEFENDANT WILL PROVE AT TRIAL**

The Library of Congress is the largest library in the world and houses over 130 million items, including books and other printed materials, maps, sound recordings, photographs, and manuscripts. The Library employs over 4,000 full-time employees in seven major Service Units. The majority (almost 2,000) of the Library's employees are employed in the Library Services Service Unit. The head of Library Services is the Associate Librarian for Library Services. The current Associate Librarian for Library Services is Deanna Marcum. Ms. Marcum was selected and appointed to the position of Associate Librarian for Library Services in August of 2003. Ms. Marcum is in the Senior Level pay grade, a pay scale that is similar to the Senior Executive Service pay scale in the Executive Branch of the Federal Government.

Ms. Mansfield was promoted to pay grade GS-15 in 1998, when she applied and was selected for her current position as Chief of the Arts and Sciences Cataloging Division ("ASCD") by the then Director for Cataloging, Beacher Wiggins. Compl. ¶ 6. At the time, the Cataloging directorate was one of seven directorates within Library Services. When

Ms. Mansfield was selected for the position of Chief of ASCD in 1998, she worked under Mr. Wiggins as an Automated Operations Coordinator, pay grade GS-13, Step 10. At all times relevant to this action, Ms. Mansfield's permanent position of record has been Chief of the ASCD.

In September of 2002, then Associate Librarian for Library Services, Winston Tabb, retired. Mr. Tabb had been Mr. Wiggins's direct supervisor. Until the process for selecting Mr. Tabb's replacement could be completed, the Library detailed Mr. Wiggins as the Acting Associate Librarian for Library Services. Consequently, Mr. Wiggins then detailed Ms. Mansfield to the position of Acting Director for Cataloging while he was performing the duties of Acting Associate Librarian for Library Services. Consistent with the Library's regulations, Mr. Wiggins temporarily promoted Ms. Mansfield to the Senior Level pay grade for a period of 120 days during her detail to the position of Acting Director for Cataloging.

Following the expiration of that period, Mr. Wiggins wanted Ms. Mansfield to continue her detail to the position of Acting Director for Cataloging, even after the end of her 120-day promotion, because Mr. Wiggins was performing the duties of Acting Associate Librarian and other duties during and after the search for Mr. Tabb's replacement. Also, Mr. Wiggins wanted Ms. Mansfield to continue her detail to the position Acting Director for Cataloging because he was pleased with her performance as Acting Director for Cataloging during her initial 120-day assignment, and because he wanted the continuity of a single manager leading the Cataloging directorate during his absence. Then, in February of 2004, consistent with Library regulations, Mr. Wiggins again promoted Ms. Mansfield to the Senior Level pay grade for 120 days during her detail to the position of Acting Director for Cataloging.

Ms. Mansfield was detailed to the position of Acting Director for Cataloging from September of 2002 until June of 2004, when Ms. Mansfield's second temporary promotion ended. Mr. Wiggins sought to have Ms. Mansfield paid in the same manner that he was paid when he was detailed to the Acting Director for Cataloging in 1995-1997. Mr. Wiggins believed that, in accordance with the Library's regulations, he could only promote Ms. Mansfield to the Senior Level pay for two 120-day periods.

Prior to becoming Acting Associate Librarian, Mr. Wiggins requested that the Library's Human Resources Services ("HRS") upgrade all the Cataloging Chief positions under his supervision to Senior Level pay. At the time, three of the Cataloging Chief positions were classified as Senior Level (one SL-position held by a male, John Byrum, and two SL positions held by females, Sue Vita and Barbara Tillet), and five of the positions, including Ms. Mansfield's position of Chief of the ASCD, were classified GS-15.[2] As a result of Mr. Wiggins's efforts, in 2003 the Library's HRS hired a private contractor-classifier to undertake a classification review of the Cataloging Chief's positions. Upon concluding his review, the contractor-classifier recommended that three of the GS-15 Cataloging Chief positions (including Ms. Mansfield's position) be considered for upgrade to the Senior Level.

In August of 2003, Deanna Marcum was appointed to replace Mr. Tabb as the Associate Librarian for Library Services. Initially, Mr. Wiggins was Ms. Marcum's Deputy Librarian, but subsequently was returned to his position of Director of Cataloging. Shortly after Ms. Marcum's appointment, the Director of Human Resources Services, Teresa Smith, submitted Mr. Wiggins'

---

[2] Of the five (5) GS-15 Chiefs' positions in Cataloging, three were held by males: Jeffrey Heynen, John Celli, and Dennis McGovern; and one was held by a female: Ms. Mansfield. The remaining GS-15 Chief position was vacant.

recommendation on the upgrades for the Chiefs' positions to Ms. Marcum for her consideration. At the time of her submission, Ms. Smith informed Ms. Marcum that she did not believe that the Chief positions should be upgraded to the Senior Level. Ms. Smith was particularly concerned because Mr. Wiggins and Ms. Mansfield appeared to be seeking the upgrade of all positions in Library Services. After consulting with Ms. Smith, Ms. Marcum concluded that she would not add additional Senior Level or GS-15 positions until she reviewed the Library Services planned realignment. Further, Ms. Marcum did not believe that the Library Services' budget could support the addition of any new Senior Level positions. Ms. Marcum therefore, did not approve any of the three recommended Chief's positions for upgrades. Moreover, during her tenure as Associate Librarian for Library Services, Ms. Marcum has not recommended any position for upgrade to the Senior Level.

In September of 2004, Ms. Marcum decided to begin her proposed realignment of Library Services. As part of the realignment, and in accordance with the recommendations of several directors of Library Services, Ms. Marcum decided to create five directorates that would oversee the operations of Library Services, until the realignment was completed. Mr. Wiggins and Carolyn Brown (another Senior Level manager in Library Services) were assigned as Directors of the two largest directorates, Acquisitions and Bibliographic Access ("ABA") and Collections Services ("CS"), respectively. Ms. Marcum gave Mr. Wiggins and Ms. Brown permission to assign collateral duties to employees within their directorates who were willing to volunteer to assist the Directors in carrying out their duties. Based upon Ms. Mansfield's expressed interest in performing these collateral duties, Mr. Wiggins recommended that she be assigned the collateral duties of Assistant Director for Bibliographic Access. Upon

consideration of Mr. Wiggins' recommendation, Ms. Marcum therefore assigned the Assistant Director for Bibliographic Access duties to Ms. Mansfield.[3] Based upon Steve Herman's (Chief of the Collections Access, Loan, and Management Division) and Mark Dimunation's (Chief of the Rare Book and Special Collections Division) expressed interest in performing these collateral duties, Ms. Brown recommended that Mr. Herman and Mr. Dimunation be assigned the collateral duties of Assistant Director of Collections Management and Assistant Director of Special Collections and Services, respectively. Upon consideration of Ms. Brown's recommendation, Ms. Marcum approved and assigned Mr. Herman and Mr. Dimunation to the recommended Assistant Director duties. At the time of their assignment to the Assistant Director collateral duties, Mr. Herman and Mr. Dimunation were in Senior Level positions.[4]

Shortly after being assigned the collateral duties of Assistant Director, Ms. Mansfield expressed to Mr. Wiggins her disappointment that the Assistant Director collateral duties did not result in a permanent position and an upgrade for her to the Senior Level. At the time, Mr. Wiggins believed that the Assistant Director collateral duties (coordinating functions designed solely to assist the Directors, Mr. Wiggins and Ms. Brown) should be included in new position description for Ms. Mansfield, and that the new position description should be classified at the Senior Level pay grade. Because the recently created duties were collateral, there did not exist a position description that contained the duties. Mr. Wiggins therefore, in January of 2005, drafted

---

[4] Mr. Dimunation became a Senior Level employee when he was selected to be Chief of the Rare Book and Special Collections Division, in March of 1998. Mr. Herman became a Senior Level employee when his position was reclassified by his then supervisor, Diane Kresh, Director for Public Service Collections in Library Services, in March of 1999.

a position description for Ms. Mansfield, which encompassed the Assistant Director collateral duties, and he submitted the position description to Ms. Marcum for consideration. Upon completing her review, consistent with her prior opinion concerning new Senior Level positions, Ms. Marcum rejected Mr. Wiggins's recommendation. In voicing her rejection of the position description, Ms. Marcum was adamant that the Assistant Director duties were strictly collateral, and that, due to budgetary constraints, she did not intend to create any new Senior Level positions.

In March 2005, Ms. Mansfield complained to the Librarian of Congress that she believed she was performing work at the Senior Level for which she was not being paid. The Library gave Library Services three options to remedy Ms. Mansfield's complaint: (1) Library Services could remove the alleged grade-enhancing duties (i.e., the collateral duties) from Ms. Mansfield; (2) Library Services could remove the alleged grade-enhancing duties (i.e., the collateral duties) from Ms. Mansfield, Mr. Dimunation and Mr. Herman; or (3) Library Services could create a new position, one that would be classified at the Senior Level and advertised under the Library's Merit Selection Procedures. Thus, the Library could not promote Ms. Mansfield to a new Senior Level position, without first advertising the position and allowing Ms. Mansfield (and anyone else interested) to compete for the position. Ms. Mansfield's own expert admits that the Library could have exercised any of these three options. Therefore, after consideration of the options, in April of 2005, Ms. Marcum decided to abolish the Assistant Director collateral duties for Mr. Dimunation, Mr. Herman and Ms. Mansfield. Ms. Mansfield filed her complaint in this Court on April 14, 2005.

## CONTENTIONS OF LAW DEFENDANT WILL PROVE AT TRIAL

### I. The Equal Pay Act

The Equal Pay Act ("the Act" or "EPA") was enacted in 1963 as an amendment to the Fair Labor Standards Act, and was extended from private industry to the Federal Government in 1974. 29 U.S.C. § 201, 203(e)(2). Pursuant to the Act, no employer may discriminate upon the basis of sex, by paying different wages to employees of the opposite sex who perform equal work:

> No employer having employees subject to any provision of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex . . . .

29 U.S.C. § 206(d)(1). To establish a prima facie case under the Equal Pay Act, a plaintiff must show that "i) the employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and iii) the jobs are performed under similar working conditions." Belfi v. Prendergast, 191 F.3d 129, 135 (2nd Cir. 1999); accord Jenkins v. United States, 46 Fed. Cl. 561, 563 (2000).

Once a plaintiff makes a prima facie case under the Equal Pay Act, "the burden of persuasion shifts to the defendant to show that the wage disparity is justified by one of the affirmative defenses provided under the Act: "'(i) a seniority system; (ii) a merit system; (iii) a

system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor than sex.'" Belfi, 191 F.3d at 135 (quoting 29 U.S.C. § 206(d)(1)).

The legislative history, although not extensive, provides some guidance as to the scope of the exemptions. The Senate Report expressed that body's intent, indicating that pay differentials based upon an employee's seniority, rather than upon the employee's sex, are valid exceptions to the provisions of the Act:

> S. 1409 is designed to eliminate any wage rate differentials which are based on sex. Neither the committee nor anyone proposing equal-pay legislation intends that other factors cannot be used to justify a wage differential. For example, a woman and a man may be doing precisely the same work at adjacent posts, and yet the man may be earning substantially more than the woman, or vice versa, **because of his or her tenure on the job. Such seniority systems are valid exceptions provided they are based on tenure and not upon sex.** Similarly, a merit system or piecework system which measures either the quantity or quality of production or performance can result in far greater gross earnings by one person compared to another, even though both are technically doing the same type of work. Obviously, such systems which measure quantity or quality of production or performance will be valid exceptions to the equal-pay requirements. Without question, employers have other valid classification programs which can justify an exception.

S. Rep. No. 176, 88th Cong., 1st Sess. 4 (1963) (emphasis added). Likewise, in its report, the House indicated that "differences based on experience, training, or ability also would be excluded." H.R. Rep. No. 309, 88th Cong., 1st Sess. 3, reprinted in 1963 U.S. Code Cong. & Admin. News, 687, 689.

Congress, therefore, intended that merit systems, seniority systems, and the experience, training or ability of an employee may justify salary differentials. The Equal Pay Act was never intended to circumscribe an employer's appraisal or determination of the need and utilitarian

value of an employee's performance. Wirtz v. Wheatan Glass Co., 284 F. Supp. 23, 33 (D.N.J. 1968)(rev'd on other grounds, 421 F.2d 259 (3rd Cir. 1970)). "Even if a man and woman are doing the same work for different pay, there is no violation if the wage difference stems from a factor other than sex." Wollenburg v. Comtech Mfg. Co., 201 F.3d 973, 976 (7th Cir. 2000).

## II. Ms. Mansfield Cannot Establish A Prima Facie Case That The Library Violated The Equal Pay Act When It Did Not Reclassify Her Position Of Chief Of The Arts And Sciences Cataloging Division To The Senior Level

Ms. Mansfield cannot establish that her job as Chief of the Arts and Sciences Cataloging Division should be an SL position. Thus, we do not believe Ms. Mansfield will be able to make a prima facie case that the Library violated the Equal Pay Act, when it did not reclassify and upgrade her GS-15 position as Chief of the Arts and Sciences Cataloging Division to the Senior Level, after a classification review recommended that this position be considered for upgrade.

To establish a prima facie EPA claim, Ms. Mansfield has the burden of proving "that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions.'" Corning Glass Works v, Brennan, 417 U.S. 188, 195 (1974). Once Ms. Mansfield establishes a prima facie case, the burden then shifts to the Library to show that the wage differential is justified by one of the affirmative defenses provided in the Act. Corning Glass Works, 417 U.S. at 196-97.

Although "equal work" does not mean identical, the "standard for determining whether jobs are equal in terms of skill, effort, and responsibility is high." Ellison v. United States, 25 Cl. Ct. 481, 486-87 (1992). Merely comparable jobs are not sufficient. "When Congress enacted the Equal Pay Act, it substituted the word 'equal' for 'comparable' to show that 'the jobs

should be virtually identical, that is, they would be very much alike or closely related to each other." Id. (citing Brennan v. City Stores, Inc., 479 F.2d 235, 238 (5th Cir. 1973)). "The test is whether the work performed by plaintiff and the comparable male employee is 'substantially equal.'" Jenkins v. United States, 46 Fed. Cl. 561, 563 (2000).

Ms. Mansfield attempts to compare herself to male employees whose positions are not equal to hers (Mark Dimunation and Steve Herman). However, for the reasons demonstrated below, the Court should deny plaintiff's claim because she has failed to establish a prima facie case that her position is equal to a single male employee.

### A. Ms. Mansfield Does Not Perform Work Equal To That Of Mr. Dimunation Or Mr. Herman

Ms. Mansfield does not perform work equal to that performed by Mr. Dimunation. First and foremost, their job responsibilities, duties and tasks are significantly different. Indeed, Ms. Mansfield concedes that she did not know whether her duties were even "comparable" to the duties performed by Mr. Dimunation and Mr. Herman, until she was informed of this by her expert witness, Mr. Perloff; but, Mr. Perloff is wrong. Ms. Mansfield is responsible for providing administrative oversight of the Arts and Sciences Cataloging Division. At the heart of Ms. Mansfield's duties is cataloging and managing catalogers in her division. Cataloging is more clerical in nature and requires significantly fewer skills than those required of Mr. Dimunation and Mr. Herman.

Mr. Dimunation, on the other hand, is responsible for the custody and security of the Library's rare book and other special materials collections, and serves as the Legislative Branch's expert on the rare books collection. Thus, Mr. Dimunation is a curator for the Library's rare book and special materials collections. Ms. Mansfield is not a curator of rare

books or other unique materials; in fact, Ms. Mansfield is not a curator for any Library collections. Though "[d]ifferences in subject matter do not render the jobs unequal if the tasks involved are the same," Jenkins, 46 Fed. Cl. at 568, the tasks performed by Ms. Mansfield and Mr. Dimunation are significantly different. The only similarity between the tasks that Ms. Mansfield and Mr. Dimunation perform are those related to supervising employees within their respective sections. This similarity is not sufficient to establish that Ms. Mansfield and Mr. Dimunation should be paid equal wages. Indeed, courts have overwhelming rejected the argument that managerial positions, at the same level or with the same title, are equal. See Stopka v. Alliance of American Insurers, 141 F.3d 681, 685-86 (7th Cir. 1998) (agreeing that Vice-President of Administrative Division is not equal to other vice-presidents of other divisions); Sobol v. Kidder, Peabody & Co., 49 F. Supp. 2d 208, 219 (S.D.N.Y. 1999) (finding that head of Utility Finance Groups was not substantially equal to head of Merger and Acquisition Group); Lambrecht v. Real Estate Index, Inc., 1997 WL 17794 (N.D. Oh. 1997) (finding that Senior Vice-President of Marketing and Sales was not equal to Senior Vice President of Title Guaranty); Robinson v. Davis Memorial Goodwill Industries, Inc., 846 F. Supp. 104, 106-08 (D.D.C. 1994) (holding that Soft Goods Manager was not equal to Used Car Manager); Woodward v. Heritage Imports, 773 F. Supp. 306, 310 (D. Utah 1991) (holding that manager of Finance and Insurance Department is not equal to manager of New and Used Sales Department); Sherman v. City of Lee's Summit, 577 F. Supp. 568, 573-75 (W.D. Mo. 1983) (finding administrative supervisor not equal to law enforcement supervisors in police department).

Second, Ms. Mansfield's and Mr. Dimunation's positions require entirely different sets of skills. Mr. Dimunation is required to have technical knowledge of the development, protection and interpretation of the rare books' collection (approximately 500,000 items including, but not limited to, books, playbills, prints, photographs, manuscripts, etc). "Where the amount or degree of skill required to perform a job is substantially greater than that required to perform another job, the equal pay standard cannot apply even though the jobs may be equal in all other respects." 29 C.F.R. § 1620.15. In Jenkins, this Court found that the equal pay standard did not apply where the equipment specialist was required to have technical knowledge that the management assistant did not have, despite the fact that they both performed similar tasks with regard to equipment inventory. Jenkins, 46 Fed. Cl. at 568. Likewise, the equal pay standard does not apply here because Ms. Mansfield does not have the technical knowledge of the functions that Mr. Dimunation is required to possess.

Ms. Mansfield instead possesses skills in an entirely different field of office administration. Jobs that require distinct skills foreclose any comparison under the Equal Pay Act. See Forsberg v. Pacific Northwest Bell Telephone Co., 840 F.2d 1409, 1414-16 (9th Cir. 1988) (finding that work of maintenance administrators was not equal to test desk technicians, because they possessed substantially different skills); Soble v. University of Maryland, 778 F.2d 164, 167 (4th Cir. 1985) (finding that plaintiff's work was not equal to male assistant professors in different departments, because other departments were highly specialized and required distinct skills); Francoeur v. Corroon & Black Co., 552 F. Supp. 403, 407 (S.D.N.Y. 1982) (holding that plaintiff did not bear her burden of showing equality, where plaintiff primarily exercised skills in

personnel issues and male employee primarily exercised skills in office administration in his job).

Similarly, Ms. Mansfield's position as Chief of the Arts and Sciences section is not substantially equal to Mr. Herman's position as Chief of the Collections, Access, Loan and Management Division. Though they both perform administrative duties, Mr. Herman's position requires greater skill, effort and responsibility when it comes to the security of the Library's many treasures. Mr. Herman's position, unlike Ms. Mansfield's, requires him to formulate policy. As a Chief of the Collections, Access Loan and Management Division, Mr. Herman is required to utilize his knowledge of security systems to improve the overall administration and management of the entire Library. In performing his job, Mr. Herman has wide latitude in independently planning projects and selecting methods.

In formulating the policies and managing the Library's security programs, Mr. Herman is required to possess expertise in security systems and space management, so that he can develop security plans for all the Library's collections. In contrast, Ms. Mansfield's job requires her to carry out more routine tasks in accordance with established office and Library policies and procedures and neither she, nor the individuals she supervises, have very much discretion concerning how books are cataloged. As Ms. Mansfield's duties are of a more routine nature, her job requires less mental exertion. See Martindale v. Jason/Empire, Inc., 1981 WL 180, *4 (D. Kan. 1981) (finding that male employee who spent more time on projects which required innovative thought required greater mental exertion and, therefore, effort).

Finally, Mr. Herman's position requires greater responsibility than does Ms. Mansfield. See Welde v. Tetley, Inc., 864 F. Supp. 440, 456 (M.D. Pa. 1994) (finding that positions are not

equal where one had wider-scale corporate responsibilities). "Responsibility is concerned with the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation." 29 C.F.R. § 1620.17. Mr. Hermann’s job directly affects the maintenance and security of the Library’s collection, which is the primary mission of the Library. In contrast, Ms. Mansfield’s position has a less direct effect upon the primary mission of the Library. Indeed, the advance of online technology has caused the Acquisitions and Bibliographic Access directorate where Ms. Mansfield works to eliminate or combine with other duties many of the tasks that Ms. Mansfield's section is called upon to perform.

For the reasons set forth above, Ms. Mansfield will not be able to establish a prima facie case at trial that her work is substantially equal to Mr. Hermann.

**B. Even Assuming Ms. Mansfield Has Made A Prima Facie Case, Ms. Mansfield’s Comparators Are The Other Chiefs In The Cataloging Directorate And All Decisions Related to Ms. Mansfield’s Rate Of Pay Were Legitimate Business Reasons And Based Upon Factors Other Than Gender**

Prior to becoming Acting Associate Librarian, Mr. Wiggins requested that the Library’s Human Resources Services upgrade all the Cataloging Chief positions under his supervision to the Senior Level. At the time of Mr. Wiggins request, three of the Cataloging Chief positions were classified as Senior Level (one SL-position held by a male, John Byrum, and two SL positions held by females, Sue Vita and Barbara Tillet), and five of the positions including one held by Ms. Mansfield position, were classified at the GS-15 pay grade level.[5] As a result of Mr. Wiggins’s efforts, in 2003 the Library’s HRS hired a private contractor-classifier to undertake a

[5] Of the GS-15 Chiefs in Cataloging, three were males (Jeffrey Heynen, John Celli, and Dennis McGovern) and one was a female (Ms. Mansfield). The remaining GS-15 Chief position was vacant at the time.

classification review of the Cataloging Chief's positions. Upon concluding his review, the contractor-classifier recommended that three of the GS-15 Cataloging Chief positions be considered to be upgraded to the Senior Level. Specifically, the contractor recommended that a vacant position and the positions occupied by Mr. Heynen and Ms. Mansfield be upgraded to the Senior Level.

In August of 2003, Deanna Marcum was appointed as the new Associate Librarian for Library Services. Shortly after Ms. Marcum's appointment, the Director of HRS, Teresa Smith, submitted a list of the Chief's positions that were recommended for upgrades to Ms. Marcum for review. Ms. Smith informed Ms. Marcum that she did not believe that the Chief positions should be upgraded to the Senior Level. Furthermore, Ms. Smith disagreed with the contractor's report and recommendations, and Ms. Smith did not feel that the upgrades were warranted. After consulting with Ms. Smith, Ms. Marcum concluded that she did not want to add any Senior Level or GS-15 positions to Library Services' management structure, before a planned realignment, and did not believe that Library Services' budget could support the addition of any new Senior Level positions. Ms. Marcum therefore, did not approve any of the three recommended Chief position upgrades.

Thus, Ms. Marcum's decision to not reclassify and upgrade any of the Chief's positions, including Ms. Mansfield's position, to Senior Level was gender-neutral and based on the legitimate business reason of minimizing costs at a time when the unit she was leading was undergoing significant changes. See Lissak v. United States, 49 Fed. Cl. 281, 287 (2001)(an employer's desire to save money constitutes a legitimate business reason for implementing a pay

and classification system); Belfi, 191 F.3d at 136 (personnel system motivated by cost control is acceptable so long as the system is not gender-based).

Additionally, this decision was clearly not pretextual, because Ms. Mansfield's position was only one of three affected by Ms. Marcum's decision to not follow the contractor-classifier's recommendation. Indeed, one of the three GS-15 Chief positions not upgraded was held by a male, Jeffrey Heynen, and the other position was vacant at the time. Therefore, the Library did not violate the Equal Pay Act when it did not upgrade Ms. Mansfield to Senior Level, because Ms. Marcum's decision to not upgrade Ms. Mansfield's position to Senior Level was based on legitimate business reasons and was gender-neutral.

## III. For Trial Purposes, the Government Will Assume That Ms. Mansfield Can Establish Her Prima Facie Case Under The Equal Pay Act When She Was Temporarily Detailed To The Position of Acting Director For Cataloging

At trial, the Government will stipulate that Ms. Mansfield has established a prima facie Equal Pay Act claim concerning her temporary detail to the position of Acting Director for Cataloging, i.e., Ms. Mansfield was paid less than Beacher Wiggins, even though Ms. Mansfield performed equal work requiring equal skill, effort, and responsibility under similar working conditions. However, the difference in pay between Ms. Mansfield and Mr. Wiggins had nothing to do with sex.

### A. Ms. Mansfield Is Not Entitled To Be Paid The Same As Her Supervisor Mr. Wiggins Because The Pay Differential Was A Result Of HRS' Gender - Neutral Personnel Pay System And Mr. Wiggins' Seniority

At trial, we will prove that the Library did not violate the Equal Pay Act, because any pay differential between Ms. Mansfield's pay and that of her male supervisor, to whose position she was temporarily detailed, stems from legitimate business factors other than sex. Ms. Mansfield

claims that the Library violated the Equal Pay Act during the two times she was temporarily promoted to the Senior Level and performed the higher-graded duties of her supervisor. Specifically, Ms. Mansfield contends she is entitled to the same rate of pay as that earned by Mr. Wiggins in that position. But Mr. Wiggins had been in the position for over seven years, and his higher pay rate was caused by his greater experience. Thus, any pay differential between Ms. Mansfield's rate of pay and Mr. Wiggins' rate of pay, during the times she was temporarily promoted to the Senior Level while performing duties as Acting Director for Cataloging, resulted from a gender-neutral personnel pay system and not on account of gender bias.

Mr. Wiggins had been a Senior Level employee since his selection and appointment to the permanent position of Director for Cataloging in 1997. Ms. Mansfield was only appointed to her GS-15 position in 1998. The Library's HRS properly considered Ms. Mansfield's lack of experience at the Senior Level when it determined the amount of pay that Ms. Mansfield would receive during the period of her temporary promotion.[6]

The testimony at trial will make clear that any pay differential between Ms. Mansfield's rate of pay and Mr. Wiggins's rate of pay, during Ms. Mansfield's temporary detail and promotions to the Senior Level while performing duties as Acting Director for Cataloging, resulted from a gender-neutral personnel pay system and not on account of gender bias. The pay differential between Ms. Mansfield and Mr. Wiggins was because of HRS's gender-neutral method of compensating employees who are temporarily promoted to Senior Level but, also

---

[6] Indeed, when Mr. Wiggins was Acting Director for Cataloging from 1994 to 1997 – the same duties to which he assigned Ms. Mansfield in September of 2002 – his pay also was determined by HRS and was based on his then-current pay as a GS-15. The Library's equal treatment of Mr. Wiggins when he was temporarily promoted to Senior Level demonstrates that gender was not a factor in determining Ms. Mansfield's pay at the Senior Level.

because Mr. Wiggins had more experience and seniority in the position by the time Ms. Mansfield assumed the duties of Acting Director for Cataloging.

## IV. Ms. Mansfield Cannot Establish An Equal Pay Act Violation For The Period She Performed The Collateral Duties Of The Assistant Director For Bibliographic Access

As previously delineated (see section II.A.), Ms. Mansfield fails to establish that her duties as the Assistant Directory For Bibliographic Access were equal to that of Mark Dimunation and Steve Herman. Thus, the Court should deny her claim because she has failed to establish a prima facie case. However, even assuming she can establish a prima facie case, she cannot establish an Equal Pay Act violation, because any pay differential was not sex-based.[7]

Ms. Mansfield alleges that both Mr. Herman and Mr. Dimunation received Senior Level pay during this period, while she continued to be paid at the rate of her permanent GS-15 position. Compl. ¶¶ 19-20. Ms. Mansfield alleges that she should have been paid the same amount as Mr. Herman and Mr. Dimunation because she performed the same work. Compl. ¶ 19-20. Ms. Mansfield is incorrect.

First, the decision to assign unclassified, collateral duties to Ms. Mansfield, Mr. Dimunation, and Mr. Herman was made by Ms. Marcum upon the basis that these duties would be collateral duties for each of the incumbents and not new permanent positions requiring a specific pay grade increases. Second, when Mr. Dimunation and Mr. Herman were assigned duties (along with Ms. Mansfield) as Assistant Directors, Mr. Dimunation and Mr. Herman already were at the Senior Level pay grade, and had been for several years. By contrast, when she volunteered for the collateral duties, Ms. Mansfield was working in her GS-15 position.

[7] This period is between August 2004 and April 2005.

Compl. ¶ 12, 19. Therefore, any pay disparity was a result of Mr. Dimunation and Mr. Herman having been in permanent Senior Level positions for several years at the time of their assignment to the Assistant Director duties, not because of a decision to pay them more (and Ms. Mansfield less) at the time of their assignment to these collateral duties. It was certainly not because Ms. Mansfield was female, and Mr. Dimunation and Mr. Herman were males.

Therefore, although we believe Ms. Mansfield will testify at trial about her disappointment that her Assistant Director collateral duties would not be made into a permanent Senior Level position, it is clear that Ms. Marcum's reasons for not doing so were strictly business-related: the Library Services' budget could not sustain such a promotion at the time and the Assistant Director collateral duties were never meant to be permanent positions. Rather, they were intended as a practical means of managing certain divisions during Library Services' period of realignment. As noted above, the Library's attempt to minimize costs by not converting the Assistant Director collateral duties into permanent Senior Level positions is a valid business reason that was strictly gender-neutral. Lissak, 49 Fed. Cl. at 287. Hence, because gender-neutral and cost-minimizing policies resulted in the pay differential between Ms. Mansfield and Mr. Herman and Mr. Dimunation, the Library did not violate the Equal Pay Act.

## V. Even Assuming That The Library Violated the Equal Pay Act, The Facts At Trial Will Demonstrate That The Library's Violation Was Not Willful For Determining The Statute Of Limitations Or Awarding Liquidated Damages

The applicable statute of limitations for filing suit in a Federal court for an EPA claim is no more than two years after the cause of action accrued, or if there was willful failure to pay, no more than three years after the action accrued:

> . . . every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a

> cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.

29 U.S.C. § 255(a); Allison v. United States, 39 Fed. Cl. 471, 478 (1997).

However, any internal complaint Ms. Mansfield raised to the Library does not satisfy the statute of limitations requirement. See 29 C.F.R. § 1614.408, "Civil action: Equal Pay Act." Section 1614.408 provides:

> A complainant is authorized under section 16(b) of the Fair Labor Standards Act (29 U.S.C. 216(b)) to file a civil action in a court of competent jurisdiction within two years or, if the violation is willful, three years of the date of the alleged violation of the Equal Pay Act regardless of whether he or she pursued any administrative complaint processing. Recovery of back wages is limited to two years prior to the date of filing suit, or to three years if the violation is deemed willful; liquidated damages in an equal amount may also be awarded. The filing of a complaint or appeal under this part shall not toll the time for filing a civil action.

29 C.F.R. § 1614.408 (emphasis added); accord, Unexcelled Chemical Corp. v. United States, 345 U.S. 59, 66 (1953)(holding that the filing of an "administrative claim" does not toll or otherwise affect the limitations period imposed by section 255(a) of the FLSA on seeking judicial relief for violations of the same.); see also Nerseth v. United States, 17 Cl. Ct. 660, 664 (1989)(holding that the filing of administrative claims did not toll or otherwise affect the applicable two or three year FLSA limitations period).

Ms. Mansfield bears the burden of proving a willful violation of FLSA. Adams v. United States, 350 F.3d 1216, 1229 (Fed. Cir. 2003). The standard for willfulness is that the "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." Id. (internal quotation marks omitted). Whether an employer's violation of the FLSA was willful is a mixed question of fact and law. Alvarez v. IBP, Inc., 339

F.3d 894, 908 (9th Cir. 2003), aff'd in non-relevant part, 126 S. Ct. 514 (2005); Pabst v. Oklahoma Gas & Elec. Co., 228 F.3d 1128, 1137 (10th Cir. 2000). However, willfulness is more consistent with deliberate conduct on the part of the employer. Angelo v. United States, 57 Fed. Cl. 100, 108-09 (2003) ("Under this standard, and given that the burden of proof is on the Plaintiffs, [the employer's] failure to consider one criterion, although perhaps unreasonable and negligent, was not 'deliberate' or 'intentional' and thus not willful.").

The evidence at trial will show that the Library did not act in willful disregard of the law. Indeed, Ms. Mansfield complained only after she learned that Mr. Wiggins was unable to get her position as Chief of the Arts and Sciences Section upgraded to the Senior Level. Once it learned of her complaint, the Library considered the matter, but because its legitimate business reasons precluded an upgrade of all positions, the Library denied her claim. Thus, if the Court finds the Library violated the Equal Pay Act in this matter, it should only allow Ms. Mansfield to claim back-pay for the two years that preceded her complaint.

Similarly, if Ms. Mansfield does carry her burden of proving that the Library violated the Equal Pay Act, Ms. Mansfield is entitled to back pay and the Court may award Ms. Mansfield "an additional equal amount as liquidated damages," 29 U.S.C. § 216(b). However, a determination "that the plaintiff[] [is] entitled to recover overtime pay . . . do[es] not automatically entitle plaintiff[] to liquidated damages," Beebe v. United States, 226 Ct. Cl. 308, 640 F.2d 1283, 1295 (1981). The evidence at trial will show that the Library's decisions to pay Ms. Mansfield the way that it did were made "in good faith" and that the Library certainly had reasonable grounds to believe its decisions were not in violation of the FLSA. Accordingly, "the court may, in its sound discretion, award no liquidated damages or award any amount thereof not

to exceed the amount specified in section 216 of this title." Adams v. United States, 350 F.3d at 1226.

## VI. The Court Cannot Promote Ms. Mansfield To The Permanent Grade Of Senior Level Pursuant To The Equal Pay Act

Even if this Court were to find a violation of the Equal Pay Act, retroactively "instating" or appointing Ms. Mansfield into the Senior Level, as she demands in her complaint, would be unprecedented. Compl. p. 7, Prayer For Relief, ¶ 3. The statutory language prohibits only the payment of lower wages to one sex as compared with the other. 29 U.S.C. § 206(d)(1). Thus, this Court has never awarded a promotion to a prevailing plaintiff under the Equal Pay Act. See Ellison v. United States, 25 Cl. Ct. 481 (1992); Molden v. United States, 11 Cl. Ct. 604 (1987). Indeed, this Court has long subscribed to the view that "the Court of Claims may not grant promotions where the exercise of such power would result in substitution of the court's judgment for executive agency discretion." Skrobot v. United States, 208 Ct. Cl. 475, 534 F.2d 237, 239-40 (1975)(citing Hirsch v. United States, 205 Ct. Cl. 256, 499 F.2d 1248, 1250 (1974)).

Additionally, given that the Equal Pay Act is in pari materia with the Classification Act, Grumbine v. United States, 586 F. Supp. 1144 (D.D.C. 1984), without an explicit grant of authority for reclassification under the Equal Pay Act, a promotion that functions as a reclassification would run afoul of longstanding precedent. See United States v. Testan, 424 U.S. 392 (1976) (holding that there is no right to retroactive classification); Anderson v. United States, 764 F.2d 849 (Fed. Cir. 1985) (holding that this Court could not reclassify construction workers and accord them additional benefits, even if they were erroneously classified); Siegal v. United States, 38 Fed. Cl. 386 (1997) (holding that, even if plaintiff could prove that he was

wrongfully denied a higher grade, the Court lacked jurisdiction to retroactively reclassify plaintiff and to award related benefits).

**CONCLUSION**

The evidence at trial will show that the pay differential between Ms. Mansfield and Mr. Wiggins, Mr. Dimunation, and Mr. Herman, was the result of factors other than gender. Ms. Mansfield will not be able to produce any evidence at trial that her gender was the reason for any pay differential or that the Library violated the Equal Pay Act, and we respectfully contend that he claim should be dismissed.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Todd M. Hughes by Steven Gillingham
TODD M. HUGHES
Deputy Director

OF COUNSEL:
JESSIE JAMES, JR.
Associate General Counsel

JULIA DOUDS
Assistant General Counsel
Library of Congress
Washington, D.C.

s/Douglas K. Mickle
DOUGLAS K. MICKLE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L St. N.W.
Washington, D.C. 20530
Tel: (202) 307-0383
Fax: (202) 353-7988

June 11, 2007

Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 11th day of June, 2007, a copy of the foregoing "**DEFENDANT'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Douglas K. Mickle
Douglas K. Mickle